**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1535-23

SELENA SIMMONS,

     Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
PUBLIC EMPLOYEES'
RETIREMENT SYSTEM,

     Respondent-Respondent.

_____

        Argued October 9, 2025 – Decided October 30, 2025

        Before Judges Marczyk and Puglisi.

        On appeal from the Board of Trustees of the Public Employees' Retirement System, Department of the Treasury, PERS No. XX2757.

        Herbert J. Stayton, Jr. (Stayton Law, LLC) argued the cause for appellant.

        Brian D. Ragunan, Deputy Attorney General, argued the cause for respondent (Matthew J. Platkin, Attorney General, attorney; Janet Greenberg Cohen, Assistant Attorney General, of counsel; Brian D. Ragunan, on the brief).

PER CURIAM

Petitioner Selena Simmons appeals from the December 11, 2023 final agency decision issued by the Board of Trustees (Board) of the Public Employees' Retirement System (PERS) adopting the Administrative Law Judge's (ALJ) initial decision denying her application for accidental disability retirement (ADR) benefits. We reverse and remand.

I.

Petitioner was employed by the Vineland Developmental Center as a cottage training technician beginning in 1992. This position involved working with developmentally disabled residents and required petitioner to perform tasks such as serving meals, assisting residents who were unable to feed or groom themselves, and transferring residents on and off beds, wheelchairs, and stretchers.

Petitioner testified that on July 1, 2014, she was injured while transferring a patient from a wheelchair to a toilet. After petitioner assisted the patient to a standing position, the patient's knees buckled and the patient fell to the floor, jerking petitioner forward in the process. Petitioner heard a "pop" and felt a "burning sensation" in her back, and she was unable to lift the patient from the floor. Petitioner proceeded to receive extensive treatment for her back injury.

2

The Board denied petitioner's application for ADR benefits. Petitioner appealed and requested a hearing. The matter was then transferred to the Office of Administrative Law (OAL) for a hearing as a contested case. Virtual hearings took place on September 21 and 22, 2021, before an ALJ. The parties' experts did not dispute petitioner was disabled. However, they disagreed regarding the cause of her injuries and whether she was entitled to ADR benefits.

Dr. David Weiss testified on behalf of petitioner. He concluded petitioner had a chronic, post-traumatic cervical and lumbosacral strain and sprain, disc herniations, lumbar radiculitis, post-traumatic bilateral sacroiliac joint dysfunction, and an aggravation of preexisting, quiescent, age-related degenerative disc disease and osteoarthritis of the lumbar spine. However, the Board's medical expert, Dr. Jeffrey F. Lakin, testified petitioner had spinal stenosis, a degenerative condition, which was not a direct result of petitioner's workplace accident, but rather an aggravation of a preexisting disease. Petitioner also testified at the hearing, denying any prior accidents or injuries involving her back.

Because the ALJ who presided over the September trial was subsequently appointed to the Superior Court before the proceeding concluded, the matter was transferred to a second ALJ for further proceedings. The second ALJ held an

additional hearing on March 22, 2023. Petitioner was recalled as a witness and testified about the injuries she sustained from the July 1, 2014 accident and her ongoing medical treatments.

On November 9, 2023, the second ALJ issued an initial decision affirming the Board's determination that petitioner was not eligible for ADR benefits. He stated:

> I was able to see petitioner's demeanor when she appeared before me in a redirect of her testimony on March 22, 2023. But I did not have that opportunity with the medical testimony and must make my determinations based on the transcripts and the description of their testimony in the parties' summation briefs. Petitioner offered credible testimony, but in an accidental disability benefits case, the key testimony would have to be medical testimony.
>
> . . . While [Dr.] Weiss and [Dr.] Lakin both provided believable and seemingly credible testimony, I FIND Dr. Lakin's testimony to be more reliable in the within matter. . . . Dr. Lakin was also more persuasive . . . .
>
> Accordingly, I adopt and accept the opinions of Dr. Lakin as FACT . . . .
>
> . . . .
>
> I CONCLUDE that petitioner failed to meet her burden of proving by a preponderance of the credible evidence that the disability which prevented her from continuing her employment resulted primarily from the Incident and was not the result of a pre-existing disease

4

alone or a pre-existing disease that was aggravated or accelerated by the Incident. I CONCLUDE that petitioner failed to meet her burden of proving by a preponderance of credible evidence that she met all criteria for ADR[] [benefits].

[(Emphasis added).]

On December 11, 2023, the Board adopted the second ALJ's initial decision affirming the Board's denial of petitioner's application for ADR benefits.

II.

On appeal, petitioner argues the record supports the conclusion that she established, by a preponderance of the credible evidence, she is entitled to ADR benefits, and the Board's determination denying her benefits was arbitrary, unreasonable, and capricious. She further contends the Board mistakenly relied on the findings of the second ALJ—that the Board's expert, Dr. Lakin, was "more reliable" than petitioner's expert, Dr. Weiss—because the second ALJ did not have the opportunity to witness and hear the testimony of either expert. We confine our discussion to petitioner's procedural argument regarding the ALJ's credibility findings.

We review agency decisions under an arbitrary and capricious standard. Zimmerman v. Sussex Cnty. Educ. Servs. Comm'n, 237 N.J. 465, 475 (2019).

5

"In order to reverse an agency's judgment, an appellate court must find the agency's decision to be 'arbitrary, capricious, or unreasonable, or [] not supported by substantial credible evidence in the record as a whole.'" In re Stallworth, 208 N.J. 182, 194 (2011) (quoting Henry v. Rahway State Prison, 81 N.J. 571, 579-80 (1980)) (alteration in original). The party challenging the administrative action bears the burden of making that showing. Lavezzi v. State, 219 N.J. 163, 171 (2014).

In determining whether agency action is arbitrary, capricious, or unreasonable, we must examine:

> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
>
> [In re Stallworth, 208 N.J. at 194 (quoting In re Carter, 191 N.J. 474, 482-83 (2007)).]

We defer to the Board's interpretation of the statutes it is charged with enforcing. Thompson v. Bd. of Trs., Tchrs.' Pension & Annuity Fund, 449 N.J. Super. 478, 483 (App. Div. 2017) (citing Richardson v. Bd. of Trs., Police & Firemen's Ret. Sys., 192 N.J. 189, 196 (2007)). However, an appellate court is

"in no way bound by the agency's interpretation of a statute or its determination of a strictly legal issue." Richardson, 192 N.J. at 196 (quoting In re Taylor, 158 N.J. 644, 658 (1999)). Also, "[a] reviewing court 'may not substitute its own judgment for the agency's, even though the court might have reached a different result.'" In re Stallworth, 208 N.J. at 194 (quoting Carter, 191 N.J. at 483).

Under N.J.S.A. 43:15A-43(a), a member of PERS becomes eligible for ADR benefits if the "employee is permanently and totally disabled as a direct result of a traumatic event occurring during and as a result of the performance of [their] regular or assigned duties." The Legislature amended N.J.S.A. 43:15A-43 in 1966 to add the phrase "direct result," reflecting the Legislature's intent "to make the granting of an accidental disability pension more difficult." Gerba v. Bd. of Trs., Pub. Emps.' Ret. Sys., 83 N.J. 174, 183 (1980) (quoting Cattani v. Bd. of Trs., Police & Firemen's Ret. Sys., 69 N.J. 578, 584 (1976)).

Generally, we grant deference to a trial court's credibility findings, as these findings are often "influenced by matters such as observations of the character and demeanor of witnesses and common human experience that are not transmitted by the record." State v. Locurto, 157 N.J. 463, 474 (1999). In other words, credibility is an issue that is mostly determined by seeing and hearing the witnesses. Mayflower Indus. v. Thor Corp., 15 N.J. Super. 139, 170

7

(Ch. Div. 1951). Thus, a court should refrain from making credibility determinations without the opportunity to see the witness or hear testimony because "[t]here is no substitute for placing a witness on the stand and having the testimony scrutinized by an impartial factfinder." State v. Porter, 216 N.J. 343, 356 (2013); see also Mayflower Indus., 15 N.J. Super. at 170. When a matter largely rises and falls on the credibility of witnesses, a judge cannot properly make a credibility finding by solely relying on the transcripts.

For example, in McGory v. SLS Landscaping, a workers' compensation judge made credibility determinations and findings of fact based solely on his interpretation of the petitioner's affidavit, which ultimately resulted in the judge dismissing the petitioner's claim. See 463 N.J. Super. 437, 451-52, 457 (App. Div. 2020). Specifically, the judge found the "petitioner was not only a liar, but a 'multiple liar.'" Id. at 457. On appeal, we stated "a holding which authorizes a [judge] to decide contested issues of material fact on the basis of conflicting affidavits, without considering the demeanor of witnesses, is contrary to fundamental principles of our legal system." Id. at 454 (quoting Conforti v.

Guliadis, 128 N.J. 318, 322 (1992)) (alteration in original). We reversed and remanded the case. Id. at 458.[1]

The outcome of this case primarily hinged on the second ALJ's findings regarding the credibility of the parties' experts. The second ALJ did not personally observe either expert testify and did not recall the experts to testify at the March 2023 hearing. Despite this, the second ALJ made credibility findings and ultimately concluded the testimony of the Board's expert was "more reliable" than petitioner's expert. The second ALJ based his credibility findings solely "on the transcripts and the description of [the experts'] testimony in the parties' summation briefs," which was central to his decision to affirm the Board's determination that petitioner was not eligible for ADR benefits. His decision, in turn, was adopted by the Board.

Because the first ALJ was not available to complete the trial, the second ALJ—who had no opportunity to assess the credibility of the expert witnesses or gauge the weight of their testimony—completed the trial and rendered an initial decision. We recognize the second ALJ was placed in a difficult position.

---

[1] Similarly, judges cannot evaluate the credibility of conflicting affidavits on summary judgment. See McDermott v. Botwick, 38 N.J. Super. 528, 532 (App. Div. 1956). This is because conflicting affidavits create factual issues that preclude summary judgment relief. See ibid.

However, we conclude a remand and new hearing is required for an appropriate determination to be made regarding the credibility of the expert witnesses, given their conflicting testimony. The second ALJ was not able to make these credibility findings by reviewing the transcripts.

The deference we owe to factfinders is because the judge's findings are "substantially influenced by [the] opportunity to hear and see the witnesses and have the 'feel' of the case, which a reviewing court cannot enjoy." Locurto, 157 N.J. at 471. That deference is particularly strong when the evidence is largely testimonial and rests on a judge's credibility findings. Gnall v. Gnall, 222 N.J. 414, 428 (2015). Here, the second ALJ acknowledged that "in an accidental disability benefits case, the key testimony would have to be medical testimony." Therefore, it is essential an ALJ—as the factfinder—determine the credibility of the witnesses before articulating findings of fact and conclusions of law. See Lewicki v. N.J. Art Foundry, 88 N.J. 75, 89-90 (1981).

We conclude the Board's denial of petitioner's ADR application was unreasonable because it adopted the second ALJ's initial decision, which lacked appropriate credibility findings because the ALJ did not observe the witnesses testify. The key issue before the ALJ was causation, which depended on the credibility of the conflicting testimony of the respective experts. Accordingly,

we vacate the Board's decision and remand for a new trial in the OAL before a different ALJ, as the second ALJ has already made credibility findings. See, e.g., R.L. v. Voytac, 199 N.J. 285, 306 (2009) ("Because the trial court previously made credibility findings, we deem it appropriate that the matter be assigned to a different trial court.").

Reversed and remanded for further proceedings. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

A-1535-23